Next case is number 2010-3131, Daley Ansaro, Ryan Baldwin v. Department of Veterans Affairs. Mr. Ingram, when you're ready. Thank you, Judge. For the police and court, my name is Dale Ingram. I represent Mr. Baldwin, the petitioner in the matter currently before the court. As to the old adage, never let them see you sweat, I have to admit that while I'm a little nervous, I'm ghastly ill. And I feel terrible, but I'm going to probably not give the presentation I'd like to give. It's deserving by the court and the client, but I'll have to do the best I can under the circumstances. I'm a little hard of hearing, too. We'll try and speak up. Thank you very much, Judge. Well, can I short-circuit this? Maybe that'll make it easier for you. Maybe it'll make it harder. Okay. What are you seeking? Is this about the back pay for the period between the time the board ordered and December 7, 2007? Technically, we think that when the board ordered him reinstated and paid back pay, case law says that he should have been reinstated, paid back pay, and then if the agency so chose, discharge him anew. What I'm not understanding here is, I guess, what went down a few years earlier. For instance, while he was off through this period, has he been collecting retirement? Well, yes, but this is why this is so- When did he go on retirement? Well, when he, on December 3rd, he filled out a sheet, SF-50, that says, I'd like to retire. Right. Okay. After he filled that out, unbeknownst to him, the agency changed it to a resignation. Right. We appealed it under wrongful termination. Right. We appealed it as removal action. The agency says, well, the board, AJ, said, well, it looks like you've retired. I resigned, so we don't have jurisdiction. Prove you have jurisdiction. So we briefed the issue, and without a hearing, the judge, administrative judge, dismissed it for lack of jurisdiction. No, we're aware of what happened. I guess my question, when did he go on retirement? His birthday, his 60th birthday. February of 2008. February of 2008, yes. So, firstly, whatever back pay you're seeking would obviously not include the retirement. Well, he'd have to pay that, his retirement back, out of the background. Right. That's OPM procedures. But, interestingly enough, when he- So, the reason this comes up is because your great brief suggests something that I had a question about as well, whereas you're saying the whole notion of what restoration to the status quo is, is mistaken, because everybody here, the government included, assumes that should be going back to the firing. And you say in your brief, no, no, no, no. He would have retired if he hadn't been involuntarily resigned. He would have retired back in December. Well, I think I agree with you on that, that that's a status quo. But the fact is, he got a status quo because he was placed on retirement. The agency, the government, nor the board, has entitled that presumption. Presumption of what? That he was going to retire. Well, that's what your brief says. Well, I've also read Aldridge and some cases after Aldridge 1, which is some cases after that, and what- Well, your brief says that the board, your issue with the board is that the government has taken the position that in the absence of the resignation, he would have been removed. And you say, no, no, no, no, no. That's just not true. What is true, that in the absence of the misinformation from the agency, Mr. Baldwin would have retired and not been involuntarily resigned. But it's a voluntary resignation that they rely upon to reinstate his determination. Yeah, but you're arguing the status quo shouldn't have been his retroactive firing. But you are saying that the restoration of the status quo should have been his retirement back in 2007. What you're saying happened, did happen. So it got all of the relief he should have got. That argument is made simply to rebut their presumption that that's why he was removed. That's why he was entitled to be removed. Well, his complaint is he shouldn't have been resigned in December 2007. He should have been retired. No, the complaint is when the board issued this decision, Baldwin II, he should have been reinstated, paid back pay, until the agency renewed its removal of him. Their presumption that he was not entitled to anything is rebutted by that, but it's not entitled. They're not entitled to that presumption, and I'm simply rebutting that they're not entitled to that presumption. Well, he wanted to retire in 2007. He wanted to retire. And you say he was wrong and the board agreed with you because rather than retiring him, they qualified it as a resignation. I'm not sure I understand the details of that, but in any event. But the fact is that he was retired within a couple months. He might have had a hard time seeing how he was agreed to. Well, he's not retired. There's no SF-52. He's withdrawing retirement. There's no SF-52 in his files requesting his retirement. The resignation. What's the impact of that? Well, we don't know. I mean, he's also getting, when you file a corrective brief, it says he's also getting health care now. But there's no basis for that. I mean. But is he getting it? Yes, but why, we can't tell you. But he's also getting his retirement pay as of February 2009. But he should be getting more because had the law been followed, he'd be reinstated. He'd be entitled to the time until he was fired anew. He'd have that at his own. Well, that's your view of the board's order. Pardon me? That's your view. Baldwin 1, which was remanded back for a hearing on whether it's an involuntary resignation or not, said we weren't entitled to a hearing under Mays v. Department of Transportation because he wasn't qualified for immediate retirement. That's wrong. He was qualified for immediate retirement. We should have had a hearing on the merits upon the. . . I don't understand that. If he voluntarily retired, what would you be appealing to the MSPB, a hearing on what. . . Well, under Mays, anyone, you can retire and still appeal the termination. He was terminated. In lieu of termination, he chose to retire. Okay. So there was no termination. There was no. So what is there to appeal? Well, you can still appeal it, Judge. That's what Mays v. Transportation holds. You can resign or you can retire and still appeal the proposed removal. That's what Mays v. Department of Transportation holds. Okay. You don't have to pick one or the other. He chose to retire and also appeal his proposed removal. Okay. And that was when it got remanded back to the board. The board should have said have a hearing on the merits of his removal action. Well, he's now had. . . But at bottom, in the past, over the past three years, he's been retired, and he's been able to challenge his removal action, which is currently pending. So what is he not having that you think he should have had? He never got the back pay. Once the board. . . Well, back pay for what? For the period during which he was retired? I mean, if he had gotten what he sought at the get-go, i.e., a retirement, he wouldn't have been getting back pay for that period. He would have been getting precisely the amount of money he actually got. Unless he wins on the merit of his removal action. Right, right. So I'm having a hard time understanding why he's in a position other than he would have been if he had been retired and not forced to resign. Had the agency and the board followed the law, once he proved that his resignation is involuntary, he should have been reinstated, paid back. Now, if they had followed the law, he would have been retired, and he would have had the right, under your view, to challenge the firing. Isn't that exactly the position? No, because his firing becoming nullity is no longer an issue. Once they involuntarily terminated him, the removal for cause disappeared. Then it's just a matter of whether your resignation is involuntary or not. Upon a determination that it was not involuntary, the appropriate remedy under board law is reinstating him, paying back pay, and if you want to fire him again for the reasons that become nullity, you can do that anew, not retroactive. The impact of this is really seismic in cases where there's proposed, where the employee alleges wrongful termination, because there's never going to be, you're not going to win anything other than the chance to have your removal hearing, because the agency can always retro... Well, if he wins, if he prevails on the fact that he, on the argument that he was wrongfully removed, he will, nobody, well, I can ask the government, but I don't think anybody's disputing that under those circumstances he will get back pay to the date of removal. But he's been, the prejudice has been so great, well, the prejudice has been so great that he's had to fight on two fronts. While we're appealing to involuntary resignation, the hearing, we had to start on the hearing on the underlying removal action. $150,000, this is a retired boilermaker with 30 years, disabled veteran, with 30 years, almost 30 years of service, pays me to give him his day in court under the involuntary resignation. Meanwhile, we get that, we still have not received a single cent in attorney's fees in this case. It's almost $200,000. He was served so severely prejudiced to be able to take the depositions he needed to file the motions he needed to file as to the removal action. He's been so horribly prejudiced that that, we've lost that, and that's on appeal. We've, I think a letter was presented to that just the other day. But the prejudice works that he's now, he's been fighting on two fronts with no ability to really effectively fight the fight he wanted to fight to start with and which should have been fought when he was remanded under Baldwin I. Because he, well, I'm going to reserve the few minutes. One question, Mr. Arnold. Are you saying basically that the two orders that were issued by the board in July, July 2009. Yes. What impact did that have on his reinstatement? The board's order clearly stated rescind the resignation. Reinstated. Retroactively. Retroactively to December 3, 2007. Okay. That's what it said. We're here on appealing to compliance. Compliance is not a matter where the board, the AJ should attempt to reconcile the dicta of the decision with the language of the order. He was ordered, reinstated, paid back pay, etc. The board or the agency, when the agency removed him retroactively, then the inquiry should have been agency. What does it say in the decision that he has to be, because they're limited under the regulations I've cited, they're limited to what is found in the decision. But there were two S-50 forms that were issued at that point. One was to remove the resignation. The other was to fire him. He has no resignation. He's never been reinstated. He's never been reinstated. If nothing else, they should have given him the opportunity to say, well, Mr. Baldwin, what do you want to do? You want to retire? You want to take a hit? What do you want to do? But if they had done that, there would have been a cost in the day, and then they clearly couldn't act retroactively. But he should have had the opportunity going back in, himself being placed in the status quo, and he'd say, today's December 3rd, 19-whatever. I think I'm going to wait until it closes business and say I'm going to retire. Yeah, but if he had done that, you couldn't be here asking about that. But we don't know what he would have done. The option was his. You say he didn't do that. He could have done that. But you say he's been on retirement since that time. He'd been fighting this. He never had the opportunity to be in the status quo. The panoply of his options on December 3rd, he never had an opportunity to do because the agency unilaterally terminated him. What he wanted to keep out of his record, the agency was free to do because he never had the opportunity to take. When you look, he's fired. You look at his personnel file, discharged for all these grievous and made-up reasons. That's what's in his personnel file. That's what he wanted to keep out. So it's clear just by that fact alone shows that he was never put in a status quo ante. If he's going to be in a status quo ante, you've got to put it back to December 3rd and say it's your choice now today. And whatever he chooses to do, the agency can't do anything then except start the discharge process anew. Okay. Okay. Thank you, Mr. Andrew. Ms. Hossford. May it please the court, the court should affirm the board's denial of Mr. Baldwin's petition for enforcement because the agency It's clear that there were glitches or errors of one sort or another. Isn't this the kind of case that shouldn't be brought to this full-scale appellate process? Isn't there room to correct the record or whatever it is that needs to be done to make this petitioner more whole than he is now in view of the admittedly wrongful action that was taken at the time that he thought he was retiring, resigning? Your Honor, in order to correct the record in the manner that Mr. Baldwin is now or Mr. Ingram is now asking for, which he never asked for below In some manner or another, it looks to me as if this is something which has become magnified, polarized, mushroomed when all that this employee wanted to do and apparently was entitled to do was to come out of this with a clean record. In order for Mr. Baldwin to come out of this with what the court is referring to as a clean record, he would have to have retired as of December 3, 2007 and take 10% reduction in his annuity, which he would then, and he's been collecting the additional 10% for over three years now He would actually have to refund the government in order to get the outcome that he is looking for. The only reason he got the increased annuity is because he took the resignation. Once the resignation is off the books and he agrees to a retirement as of December 3, 2007, then he has to take the reduced annuity which is why the Human Resources people were telling him in the beginning you have to resign, well there's dispute about that but their intent was to let him know you must resign now and then retire two months from now if you want the increased annuity. Mr. Baldwin thought he could retire that day and get the increased annuity two months later. He was wrong. There's no question about that. Was he advised wrongfully or was he doing it on his own? Obviously that was disputed. The board found that he was misinformed. That was the basis that underlay the involuntary resignation. So if the employee was misinformed by the agency, who should pay the price for that, the employee or the agency? The agency, nobody should pay the price. What should happen is that Mr. Baldwin should be placed in the status quo ante. That's what this court has said. It should be corrected, right? Yes, and he's been placed in the status quo ante. He's enjoyed the increased annuity without a reduction. The agency did not go back and say, okay, if you want to retire as of December 3, 2007, we're now going to have to decrease your annuity and you're going to have to pay us back. That never happened. They left him in that retirement status. He has been awarded attorney fees by the board. But why did they want to resurrect the removal? I mean, you wanted him out at the get-go. The government was willing to trade retirement, forget the 10 percent difference, whatever, for him just going away quietly, right? The only way that he could have gotten the increased annuity that he wanted and he's still collecting is if he had resigned. But then he wouldn't have had the right to appeal the removal. The resignation lost him the right to appeal the removal, which is why he then filed the involuntary resignation claim. But he wanted his cake and eat it too, basically. He wanted to retire at an increased annuity and appeal the removal. But I guess I'm a little confused because the other side, if I'm understanding, was suggesting that he wanted to be able to retire so he could have a clean record and not have any of this removal business on his record. But you're saying, and other parts of what he suggested, suggested that no, the whole point of the reason he challenged the resignation was because he wanted to have the removal and be able to fight it. So he wasn't looking for a clean record, right? And even when he resigned, it didn't just say resignation. It said resignation in lieu of involuntary action. If it had said retirement, it would have said retirement in lieu of involuntary action. It's not like it would have been cleaned off his record altogether. He could say, I resigned, or he could say, I retired. Yeah, but he wasn't trying to get a clean record. No, he wanted to appeal the removal. That was his whole objective from the beginning. But he also wanted to get an increased annuity. I'm still confused as to the two S-50s that were issued by the agency. In July of 2009. July 9, 2009. What happened was he was given notice of proposed removal, and then he was given a chance to respond. Then his decision letter saying you will be removed for these various and sundry acts of misconduct is effective December 3, 2007. Instead, the resignation was made effective December 3, 2007 because he came in. In July of 2009, the agency rescinded the resignation that was put in place on December 3, 2007, and instead put back the removal. But the resignation was effective as of when? December 3, 2007. But it was canceled. It was canceled, and in its place, the effective date of the removal was restored to December 3, 2007. It was restored retroactively? Retroactively, which is allowed under this court's case law and under board case law and under the Federal Personnel Guidelines. And then he was put on retirement at the same time. He was already on retirement. There was no need to put in an S-52. But not as of December 3. He was put on retirement in February. Well, what had happened was he had applied for retirement after the resignation was put in place. It was awarded. He started collecting his retirement with the increased annuity, and that was never rescinded. There was no need to rescind that retirement unless Mr. Baldwin wanted to take a cut in his retirement annuity, which he never expressed an interest in doing, all the way through the petition for enforcement up to and including the petition for review. So your position is that what he wanted at the get-go, admitting that the government, there was a mess up here and the board had to intervene to fix it, but what he wanted at the get-go was to retire and also to have the removal on his record and the ability to challenge that removal. And your position, I guess, is that's exactly what he had. He got exactly what he wanted. You're saying he wanted the removal for cause to remain on his record so that he might be inhibited from any other employment or whatever? I don't recall that being a finding or a position of anyone that he wanted to retain on the record the reasons for which he was ostensibly removed for cause. He wanted the right to fight that removal and get the removal to be taken off the record. He wanted to be eradicated by the board. He was looking for that. Precisely. He wanted to eradicate. He then was presented with an alternative law right. If you retire, then you won't have the removal for cause on your record. Is that correct? It would be retirement in lieu of involuntary action. Exactly. Right. Now, if Mr. Baldwin... Let me see if I understand. The reason that he didn't want to have a resignation for three months and then a retirement, the reason that was critical was because he wanted to be able to appeal the removal to the MSPB. That's correct. So it was never his intention. I mean, he wanted to, his point was to challenge it not to, because we see a lot of retirement cases where I'll retire in exchange for your getting the stuff out of my file. Right. And there's no intent to ever come in and appeal it. This was not a settlement. So this was, the only reason he complained about being resigned as opposed to being retired was because he always intended to, and obviously did, challenge the removal. Keep the removal on the record and challenge. That's correct. And that's the misinformation that he was given that he could do that. No, he was given the, yes, he was given the, no, he was told that he could retire, get the increased annuity he wouldn't be entitled to for two months, and then also appeal the removal. And also challenge this. And that was misinformation, I guess. That was the misinformation. But what Mr. Baldwin... And that was corrected. It was corrected when the board overturned the involuntary resignation. The resignation was taken off the books. The removal was restored. He has the right to appeal it. And he also has the benefit of the increased retirement annuity that he got by virtue of that resignation. He's gotten more than he would have if he was put in the status quo ante in this case. Except for his removal. The removal is still an issue. Right, but if he would, if he would, you know, I'm not saying the agency would do this because he never argued this below. He always said, Mr. Baldwin specifically argued before the board on this PFR that he would be in a worse position if he had retired, effective December 3, 2007, because he'd have to take a cut in his annuity and he would actually owe money to the government. It's not until now that he's saying, well, all I really wanted was the clean record. That was not what he was arguing below. And that was not what he... The opposite, right? In December... He wanted the ability to be able to challenge the removal, which is precisely why he appealed the resignation as opposed to a retirement. And he also wanted the benefit of an increased annuity that he would not be entitled to for two months when he turned 60. Now, what Mr. Baldwin has been trying to do is to equate this type of involuntary termination case with cases that are totally different, like in Schultz and Latham, where what the government does is it has an unsubstantiated claim of removal. It says, we're going to remove you without good reason, but if you retire instead, then we won't remove you. That's not what happened here. Well, that's why I found it confusing, because those are the cases I'm used to where all someone wants to do is get away with a clean record. It seems to me that the opposite was true here, that first and foremost, he wanted to be able to challenge this removal. Well, and also in those cases, because there's no real removal on the books, back pay is appropriate because the agency has to go back and actually start legitimate removal proceedings. There was never a question here that the removal proceedings were legitimate. When the board found that there was jurisdiction over the involuntary resignation in its 2008 opinion, it specifically found that Mr. Baldwin had not made a non-frivolous allegation that the removal action was substantiated, and he had not been shown that he was coerced into his retirement or resignation. The sole problem was the fact that there was misinformation as to whether he was resigning or being removed. Now, what he's seeking here is the back pay. That relief will be available to him if he prevails on his removal action, will it not? Yes, Your Honor. That relief will be available, and that is the relief he is seeking. And if the court were to find that somehow he were entitled to back pay here, then he'd be asking for back pay now, and he'd be asking for it again in the appeal that was filed with this court in January. He'd be looking for essentially a double recovery. That's the removal case that's presently pending. That's correct, because he's asking for the same relief there. He's looking for back pay and reinstatement. Yet he says that he should have gotten it here when the status quo ends. He basically just put him back in the situation where he was removed, and he had to make a choice whether to retire or resign. He chose to take the deferred annuity, and he's now in the situation he was in on December 3, 2007. Now, hypothetically, if we affirm this case, what impact will that have on the pending appeal? Will this be collaterally a stop to raise the issue of back pay? I don't think it will be collaterally stopped. Although the board in its 2008 decision found that Mr. Baldwin had not made a non-frivolous allegation that the removal was unsubstantiated, there was never a full merits review of the removal itself. So that still remains to be decided. So that's the issue that's pending in the other appeal? That's correct, Your Honor. And Mr. Baldwin's argument that the impact in this case will be seismic is just not correct. There have been numerous cases where the status quo ante has not required reinstatement with back pay, when that is not what would put the petitioner in the status quo ante. There's this court's decision in Scarf v. Department of the Air Force at 710 F. Second 1572. There are numerous board decisions, Mixer, the Washington v. TVA, Parker. In those cases, in some cases, a person was removed. That was found to be invalid. But then a rift that happened in the interim is reinstated, and they're not provided with back pay all the way back. If this happens, if the person is supposed to be put back in the situation, they would have been absent the involuntary action. And that's exactly what happened here, and there's no change in the law. With respect to Mr. Baldwin's claim that the OPM guidelines didn't permit this retroactive SF-50, that's just incorrect. Table 3A specifically says that retroactive SF-50s are allowed so long as the agency meets the 30-day requirement under Section 7513. As long as the 30-day notice of the removal is honored, then the effective date can be before the SF-50 is. When does that 30 days start running? Well, it starts when the agency issues the notice of proposed removal. In this case, that was October 5th. The decision letter didn't come out until November 27th, and the effective date was December 3rd of 2007. Just briefly, Mr. Baldwin claims that this case is not consistent with SINC, but this case is on all fours with SINC. In SINC, there was a directive reassignment that was substantiated, no attempt to coerce retirement. And in this case, substantiated removal and no attempt to coerce retirement. In SINC, the reassignment would have happened anyway. Here, the removal would have happened anyway. In SINC, a retroactive separation was granted to achieve the status quo ante. Here, Mr. Baldwin got a retroactive removal. In SINC, Mr. SINC got the right to appeal the removal. Here, Mr. Baldwin got the right to appeal the removal. So, those cases are on all fours. And just briefly, on the Aldridge case, that case is inapposite because the board found that misinformation about the effect of a threatened removal coerced the employee into retirement. It's exactly the type of case I was talking about before. No evidence of coercion here, and in that case, the board said the removal was inoperative. Here, it was not. So, unless the board has other questions, I would ask that you defer to the board's decision. Thank you, Mr. Oster. Thank you. The mistake was corrected in July 9, 2009, a year and a half after the fact, $150,000 later in attorney's fees, which it still hasn't been. After a drain like that, then he's supposed to defend the removal action, okay, which he can't, and we've had to appeal that up. Our chances are not good in that case, quite honestly. We'll make a valid effort, but we never got to do the discovery because his pocketbook was empty. We didn't get to file a motion because his pocketbook was drained by this case. Have you sought attorney's fees? Yes, and we would have been awarded attorney's fees, but the same judge has ruled against us now four times. It's pending her decision. She denied the attorney's fees. That's why this is turning into a sprual-type situation. If you win the involuntary resignation, okay, and then the agency can retroactively instill the removal action you sought to avoid by the retirement, they're able to go back and retroactively start that. You're going to win nothing, no back pay. At most, you get 30 days. They'll issue a notice of proposed removal, 30 days later remove you. You're going to be entitled to 30 days back pay after you spend $150,000 and a year and a half trying to get your day in court. And when you win it, showing that it's an involuntary resignation, that's all you're going to win because the agency, which is what happened here, put themselves back in the status quo ante, which is what's wrong with this case. This is what we've been trying to argue all along. The status quo ante goes to the appellant, to the petitioner, not the agency. The agency's action in retroactively removing him was not in accordance with law. The issue about whether putting – this whole thing came back to whether Mr. Baldwin would be in a better position than he's entitled to, and that's when they cite Sink, okay? Sink was – the issue of whether he's going to be in a better position than he's otherwise entitled to was based upon the fact that they had a hearing on the merits of his removal. That was an affirmative defense. They decided that, yeah, if we – your termination was sustained, so if we put you back, you're going to be in a better position. Well, that doesn't have anything to do with this case. Aldridge 1 and 2 – Aldridge 1, she was removed, misinformation about retirement. She retired. She appealed whether her retirement was voluntary or not. The administrative judge says, I don't see – I think this is voluntary resignation, but under Mays I'm going to hear your argument on the merits of your removal. Heard the merits of the removal, decided, I'm going to – it's sustaining the removal action. She appealed that. The board said, well, you really – she didn't receive the letter, the decision letter, and totally ignored the hearing on the merits, ordered her reinstated and paid back pay. That's a combination of Aldridge 1, which is 110 MSPR 21 and 111 MSPR 670. Those are contemporary cases to Mr. Baldwin's. Once they determine it's not – you're not put in a better place because you had a decision letter issued, which is what the holding is in Baldwin and what the CID depends upon. It's whether the board reached the underlying merits of the removal action. Evidently, it meant something in Sink. It didn't mean for anything in Aldridge, which means that Sink is limited to the facts of its case and shouldn't be – has no relevance to this case at all. So we'd ask that the removal action, retroactive removal action, be lifted, that he be reinstated and back pay under the terms of Baldwin 2 and paid back pay until such times and put back to work until such times as they begin the renewal action anew, which is what Stroke, Higashi, Mascarenas, that line of cases hold. Okay. Thank you, Mr. Ingram and his husband. The case is taken into submission.